**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARLA D. BRADFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )        02: 04cv0316 |
| | ) |
| UPMC, a Pennsylvania non-stock | ) |
| non-profit corporation, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM ORDER OF COURT**

Presently before the Court is the DEFENDANT'S MOTION IN LIMINE, with brief

in support (*Document Nos. 81 and 82*) and the RESPONSE in opposition filed by Plaintiff

(*Document No. 83*). The requests will be addressed seriatim.

    1.    <u>Request to Exclude Statistical Evidence</u>.

Plaintiff seeks to introduce evidence related to "the racial makeup of management

employees in the UPMC Corporate Services Business Unit and the racial make-up of the

employees working for and/or reporting to certain UPMC management employees who had

involvement in the alleged racial discrimination against the Plaintiff." Defendant argues that for

such statistical information to be relevant it must be probative of race discrimination as an

explanation for the Plaintiff's failure to be promoted and/or her employment being terminated.

Additionally, Defendant points out that Judge Hardiman previously ruled that only

<u>applicant flow statistical data which is shown by expert testimony</u> to be significant could be

used to infer race bias from statistics. The law of the case doctrine generally forbids one district

court from reconsidering issues that another district court decided in the same case. *See In re*

*City of Phila. Litig.*, 158 F.3d 711, 717 (3d Cir. 1998). The doctrine applies "as much to the

decisions of a coordinate court in the same case as to a court's own decisions." *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 816 (1988). Because it prevents courts from entertaining endless litigation of the same issue, the doctrine promotes finality and judicial economy. *Pub. Interest Research Group v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997). The law of the case doctrine, though, is not absolute. A district court may reconsider a previous decision that has become law of the case under four circumstances: (1) where the transferor judge becomes unavailable, thereby precluding a party from filing a motion for reconsideration; (2) where new evidence is available; (3) where a supervening change in law occurs; or (4) where the decision was clearly erroneous and would work a manifest injustice. *See In re City of Phila. Litig.*, 158 F.3d at 718; *Bridge v. United States Parole Com.*, 981 F.2d 97, 103 (3d Cir.1992).

Plaintiff does not deny that Judge Hardiman previously ruled that only statistically significant applicant flow data could be used nor does she argue that Judge Hardiman's decision should be reconsidered; rather Plaintiff argues that "[t]he problem that Plaintiff has encountered in connection therewith was that UPMC had failed to maintain or preserve or was otherwise unable to produce any records or information relative to applicant flow . . . ." Pl's Response at 4.

The Court will follow the law of the case doctrine and grant this motion in limine, unless the Plaintiff can establish that UPMC had a duty to maintain applicant flow statistical data and somehow breached that duty.

2.     Request to Exclude Evidence That Other African-American Employees of UPMC Were Discriminated Against Or Suffered Adverse Employment Actions.

Defendant seeks to exclude anticipated testimony or evidence relative to alleged discriminatory treatment suffered by other African-American employees of UPMC, namely Charese Threet, Janese Jones-Stewart, Lynette Taylor-Creigo, Rebecca Taite, and Daniel Dogo-Eskie. Plaintiff responds that she will not be offering any evidence relative to alleged discriminatory treatment received by Charese Threet, Lynette Taylor-Creigo, Rebecca Taite, or Daniel Dogo-Eskie. Pl's Memo. at 8. Plaintiff's representation in this regard is acknowledged and therefore, the request of Defendant to exclude this anticipated testimony is **DENIED AS MOOT**.

As to Janese Jones-Stewart, Plaintiff responds that she will not be offering testimony with regard to Ms. Jones-Stewart (i) receiving a discipline that was later overturned and/or (ii) that Ms. Jones-Stewart was told that child-care issues arising from delays in the start of the school day due to a snow storm was not an acceptable excuse for not being at work on time. Accordingly, the request of Defendant to exclude anticipated testimony in these two regards is **DENIED AS MOOT.**

However, Plaintiff does anticipate offering testimony that Ms. Jones-Stewart was told that she needed a college degree in order to remain in the position she held within the UPMC Human Resources Department, but that when Ms. Jones-Stewart vacated the position in 2000, the position was filled by a Caucasian individual who did not possess a college degree.

Evidence of discriminatory actions taken against other employees within the same protected class as the plaintiff is usually excluded either on relevance grounds or as unfairly prejudicial under Federal Rule of Evidence 403, unless there is substantial similarity between the decisionmakers, the time frame, and the type of action about which the co-workers offer to testify and the plaintiff's circumstance. *See Moorehouse v. Boeing Corp*., 501 F. Supp. 390 (E.D. Pa.), *aff'd mem.*, 636 F.2d 774 (1980). Where the circumstances involved in the treatment of the other employees are similar to the circumstances involved in the plaintiff's treatment, the evidence will generally be allowed. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 804 (1973); *Abrams v. Ligholier, Inc.*, 50 F.3d 1204, 1212 (3d Cir. 1995).

The Court finds and rules that under these standards, the evidence which Plaintiff proposes to offer with regard to Ms. Jones-Stewart is not relevant and would be unduly prejudicial.

First, Ms. Jones-Stewart testified that in approximately July of 1998, Ms. Margaret Markovich told her that she needed a degree to become an HRIS Specialist. The comment allegedly made by Ms. Markovich is remote in time and bears no similarity whatsoever to either the denial of Plaintiff's promotion in January 2003 or Plaintiff's disciplinary discharge in March 2003.

Second, Ms. Markovich was not a decision-maker in any of the events surrounding Plaintiff's denial of a promotion or disciplinary discharge. Undeniably, Ms. Markovich was involved in gathering witness statements, but she did not investigate the incident leading up to Plaintiff's termination nor was she a decision-maker.

For these reasons, the Court finds that the proffered testimony of Ms. Jones-Stewart is not admissible in light of the fact that the alleged statement of Ms. Markovich is remote in time and bears no similarity to Plaintiff's claims with regard to promotion denial and disciplinary discharge. Accordingly, this Motion in Limine is **GRANTED**.


       3.    <u>Request to Exclude Evidence of Allegedly Race-Biased Statements by Non-decisionmakers.</u>

Defendant seeks to exclude testimony at trial that (1) Conrad Carioto made statements which reflect a racial bias and (2) Margaret Markovich made a comment about an African-American employee. Defendant contends that the statements are stray remarks made by non-decisionmakers that are temporally remote from Plaintiff's denial of a promotion and disciplinary discharge.

Plaintiff responds that she does not intend to offer any evidence relative to the statement by Conrad Carioto as part of her case in chief. Therefore, the Defendant's request to exclude this anticipated testimony is **DENIED AS MOOT.**

However, Plaintiff may seek to introduce the remark made by Ms. Markovich. From the filings of the parties, it appears that the statement in issue was identified by Plaintiff during her deposition when she testified that "Ms. Markovich commented that an African-American male temporary employee who supported Plaintiff 'thought he was moving in.' " Def's Br. at 14.

As noted *supra,* Ms. Markovich was never Plaintiff's supervisor nor was she involved in the decision to terminate Plaintiff. Further, this lone statement neither tends to demonstrate that Plaintiff was denied a promotion and/or terminated for pretextual reasons or that she was terminated in retaliation for any protected conduct which she alleges to have engaged in. Moreover, the Court is hard pressed to find any hint of racial bias in the statement that an African-American male temporary employee "thought he was moving in."

For these reasons, the Court finds and rules that the stray remark allegedly made by Ms. Markovich is not admissible as it is completely irrelevant to any of Plaintiff's claims. Accordingly, this Motion in Limine is **GRANTED.**

4.    <u>Request to Exclude Any Evidence Concerning Plaintiff's Investigations of Internal Complaints of Discrimination and Plaintiff's Recommendations About Such Complaints.</u>

Defendant seeks to exclude any evidence, in support of Plaintiff's claim of retaliation, that Plaintiff investigated certain employee complaints of discrimination and concluded in some cases that the employees had been discriminated against. Defendant argues that Plaintiff's investigation and recommendations with regard to such complaints, along with her recommendations to her superiors regarding such complaints, do not as a matter of law constitute protected activity because the "normal role" of an HR professional, like Plaintiff, is to investigate, report on, and make recommendations related to employee complaints of discrimination.

Plaintiff responds that "UPMC seeks to resurrect and restate an issue and arguments related thereto which UPMC previously raised as part of its Motion for Summary Judgment, which Motion was denied and argument rejected by the Hon. Thomas M. Hardiman by his Order dated May 16, 2006." Pl's Response at 11.

A review of Plaintiff's brief in opposition to summary judgment reflects that Plaintiff contends that "[t]he evidence elicited during discovery in the within case supports two (2) forms of protected activity engaged in by Marla that were causally connected to her termination." Response at 8. First, "in December 2001 and January 2002, Plaintiff participated in an investigation of allegations of unlawful discriminatory employment practices on the part of UPMC that had been made by Ms. Prysock-Mitchell." *Id.*

The second form of protected activity Plaintiff engaged in "was her attempt in January 2002 to break through the glass ceiling barrier that existed for African-Americans with respect to advancement into management positions in the Corporate Services business unit of UMPC." Pl's Response at 10.

The Order of May 16, 2006, simply states that the Motion for Summary Judgment is "DENIED for the reasons stated on the record." Order, Document No. 61. Without having the benefit of the transcript of the oral arguments on the Motion held on March 15, 2006, and the Court's specific ruling(s) at such hearing, this Court is not able to determine which arguments were rejected and/or why summary judgment was denied.

It appears to this Court, however, that Plaintiff's first form of alleged protected activity, *i.e.,* reports about EEO investigations, does not constitute "protected activity." Courts

have held that an employee must "step outside" her normal role in order to be considered as opposing unlawful activity. *Claudio-Gotay v. Bectom-Diskinson Caribe, Ltd.*, 375 F.3d 99, 102 (1st Cir. 2004), *cert. denied,* 534 U.S. 1120 (2005); *Vidal v. Romallo Bros. Printing, Inc.*, 380 F. Supp. 2d 60 (D.P.R. 2005); *McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1486 (10th Cir. 1996). This Court finds and rules that neither Plaintiff's investigation of the allegations in Ms. Prysock-Mitchell's complaint, nor the recommendations that Plaintiff provided to her superiors constitutes protected activity and thus the motion in limine should be granted.

However, <u>if</u> the Plaintiff can demonstrate to this Court that this particular issue was in fact previously considered <u>and rejected</u> by Judge Hardiman, the Court may reconsider and be constrained to follow the law of the case doctrine and deny the motion in limine. Accordingly, this Motion in Limine is **HELD IN ABEYANCE** pending a determination of the application of the law of the case doctrine.

5. <u>Request to Exclude Any Evidence Of A Statement by Kerry Reese Regarding "Back Dating."</u>

Defendant seeks to exclude testimony or evidence by Ms. Jones-Stewart relative to a directive to backdate information in the UPMC Peoplesoft human resources database given to other employees of UPMC by Kerry Reese, a white employee of UPMC. Ms. Jones-Stewart testified that, in 2004, Ms. Reese instructed Toni Tesauro, Data Coordinator, how to structure a Peoplesoft entry so that it accurately reflected the hiring activity for Leslie Davis, President of UPMC Magee Women's Hospital. Ms. Jones-Stewart testified that she received an email dated

December 10, 2004, from Ms. Reese to Toni Tesauro stating "[s]ometimes backdating can be tricky."

Defendant argues that the proposed testimony of Ms. Jones-Stewart is not relevant to Plaintiff's claims, is highly prejudicial, and should be excluded. Plaintiff responds that this evidence relates to the false and/or pretextual nature of the reason which UPMC has proffered for the termination of Plaintiff's employment. The Court disagrees.

Significantly, Ms. Reese was not employed in WPIC, was not involved in the investigation that led to Plaintiff's termination, and was not the decision maker with regard to Plaintiff. Further, the Court finds that the fact that Ms. Reese may have instructed another employee to backdate information is wholly irrelevant to Plaintiff's claims especially given Ms. Reese's lack of connection to Plaintiff or her claims. Additionally, the statement does not state or imply that someone should backdate anything. For these reasons, this Motion in Limine is **GRANTED.**


6.     <u>Request to Exclude Testimony of Christina Worthy To The Effect That There Were No Opportunities for Advancement Available for African-American Employees of UPMC</u>.

Defendant seeks to exclude anticipated testimony by Christine Worthy that it was her perception that there were no opportunities for advancement available to African-American employees at UPMC. Plaintiff contends that this testimony is admissible pursuant to Rule 701 because it is "rationally based upon Ms. Worthy's perception; helpful to a clear understanding

9

of Ms. Worthy's testimony as to the history of her employment at UPMC; and is not based upon scientific, technical, or other specialized knowledge." Pl's Response at 17.

The Court finds that without a demonstration that Ms. Worthy has any personal knowledge about the circumstances or attempts of other African-Americans employees to advance, the proposed testimony is not admissible. It does not appear to the Court that Ms. Worthy has any personal knowledge with regard to attempts by African-American employees to advance in the "Human Resources Department," when such attempts were made, who made the attempts, the qualifications of any of the applicants, or who made the hiring decision(s). Without such a demonstration or the appropriate foundation being made, the personal perception of Ms. Worthy is simply not admissible. Based on the limited information the Court has at the present time, this Motion in Limine is **DENIED.**

7.    Request to Exclude Testimony of Plaintiff's Expert As To Plaintiff's Purported Damages for Lost Fringe Benefits.

Defendant seeks to exclude the testimony by Plaintiff's damages expert, Jay Jarrell, as to the purported damages attributable to a loss of fringe benefits based upon a percentage of Plaintiff's income. Defendant contends that the damages expert will opine "that Plaintiff's damages for lost benefits equal 8.8% of her W-2 income." Def's Memo. at 23.

Plaintiff, relying on *Kelly v. Matlack*, 903 F.2d 978, 985 (3d Cir. 1990), argues that a terminated employee is entitled to the value of fringe benefits (including medical insurance coverage) he or she would have continued to receive even when the employee does not obtain

replacement insurance coverage or otherwise incur consequential costs. While it is certainly correct to argue that, on a proper foundation, courts have allowed an employee to recover benefits other than lost wages such as the replacement of life and disability insurance that had formerly been paid by the employer, this Court does not read *Kelly* to hold that in an employment discrimination case the proper damage calculation of lost fringe benefits is the value of the benefits in terms of a percentage of the employee's lost income.

"When the discriminatory action is termination, a prevailing plaintiff is entitled to be made whole for losses sustained as a result of the termination." *Erie County Retirees Ass'n v. County of Erie, PA*, 166 F. Supp. 2d 310, 311 (W.D. Pa. 2001) (citations omitted). "The appropriate remedy for the discriminatory action is that which will, to the highest extent possible, put the Plaintiff[] in the position [she] would have been in had there been no discrimination." *Id*. (citation omitted).

The Court notes that several courts have calculated damages for the loss of health insurance in the termination context by determining how much the plaintiff expended in order to replace the insurance. *See, e.g., Purcell v. Sequin State Bank & Trust Co.* 999 F.2d 950 (5th Cir. 1993); *Kossman v. Calumet County*, 800 F.2d 697, 703-04 (7th Cir. 1986), *overruled on other grounds by Coston v. Plitt Theatres, Inc*., 860 F.2d 834 (7th Cir. 1988); *Merkel v. Scovill, Inc*., 570 F. Supp. 141, 146 (S.D. Ohio 1983); *Curtis v. Robern, Inc*., 819 F. Supp. 451, 459 (E.D. Pa. 1993).

After a thorough review of these cases, this Court agrees with the reasoning of the district court in the *Erie County Retirees Association* case and finds these cases to be

persuasive.  Accordingly, Plaintiff will not be permitted to present evidence regarding her purposed damages for lost fringe benefits as a percentage of her income.  This is an expense that the Plaintiff herself has apparently not incurred and awarding her lost fringe benefits based on a percentage of her income in addition to actual lost income would make her "better than whole."  *See Moore v. University of Pittsburgh of the Commonwealth System of Higher Education,* 02cv1734 (W.D. Pa. filed March 11, 2005) (McVerry, J.); *Rhodes v. Guiberson Oil Tools,* 82 F.3d 615, 620-21 (5th Cir.1996), *cert. denied,* 502 U.S. 868 (1991); *see also Merkel v. Scovill, Inc.,* 570 F. Supp. 141, 146 (S.D. Ohio 1983) (declined to award sum of health insurance premiums insurer would have paid on plaintiff's behalf in back-pay award because plaintiff never incurred these expenses and awarding them would make him more than whole).

Plaintiff will not be permitted to offer evidence that the value of her lost fringe benefits should be based upon a percentage of her former income.  Evidence of actual costs and expenses which Plaintiff has expended as a result of lost fringe benefits may be admissible.

Accordingly, this Motion in Limine is **GRANTED**.


So **ORDERED** this 18th day of January, 2008.

BY THE COURT:

s/Terrence F. McVerry, Judge
United States District Court

cc:        Charles E. Boyle, Esquire
Email: ceboyle@verizon.net

Michael E. Hoover, Esquire
Diefenderfer, Hoover, Pross & Wood
Email: mhoover@verizon.net

John J. Myers, Esquire
Eckert, Seamans, Cherin & Mellott
Email: jmyers@eckertseamans.com

Christina I. Kepplinger, Esquire
Eckert, Seamans, Cherin & Mellott
Email: ckepplinger@eckertseamans.com